McCanless, Commissioner of Finance and Taxation, *v.*
State *ex rel.* Hamm.

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

THOMAS H. MALONE, III, and C. W. TULEY, Assistant Attorneys-General, for plaintiff in error.

NORMAN FARRELL and TOM ED MURRAY, both of Nashville, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a *mandamus* suit brought by the relator to compel the Commissioner of Finance and Taxation to issue to relator a license to do business as a liquor dealer in Nashville. From a judgment in favor of the relator the Commissioner has appealed in error to this Court.

The propriety of the judgment of the trial court is to be tested by the evidence heard in the case. The relator insists that there is no motion for a new trial nor a bill of exceptions to which this Court can look and accordingly moves for a judgment here affirming the judgment below. We first consider this motion.

The judgment of the circuit court making the writ of *mandamus* peremptory was entered on April 1, 1944, and that order recited that the Commissioner excepted and prayed an appeal "which appeal the court was pleased to grant without the necessity of a bond, the defendant, acting in his official capacity as Commissioner of Finance and Taxation, execution of an appeal bond or otherwise giving security for costs being excused."

On April 4, 1944, a motion for a new trial was entered in the case and that motion was overruled on April 7, 1944. In the order overruling the motion for a new trial

it was recited that the Commissioner excepted and prayed an appeal, "which appeal is hereby granted, without the necessity of executing an appeal bond, etc., etc."

The motion to affirm is rested upon the proposition that the grant of the appeal to the Commissioner in the order of April 1, no cost bond being required, removed this case from the circuit court and deprived that court of jurisdiction to make any further orders herein. A ruling to this effect was made in *Suggs* v. *Suggs' Executors*, 1 Tenn., 2, and this ruling was repeated in *Nichols* v. *Colvill*, 1 Tenn., 81. Later the rule so stated was qualified by subsequent decisions and it was held that the appeal only became final at the end of the term. *Staggs* v. *State*, 22 Tenn., 372; *Davis* v. *Jones*, 40 Tenn., 603. And that an appeal might be set aside and an amendment allowed during the term. *Decatur Bank* v. *Berry*, 22 Tenn., 590; *Hall* v. *Bewley*, 30 Tenn., 106. See also *State* v. *Dalton*, 109 Tenn., 544, 72 S. W., 456, and *Citizens' Bank & Trust Co.* v. *Bayles*, 153 Tenn., 40, 281 S. W., 932.

So the law remained until Chapter 65 of the Acts of 1885, carried into the Code at section 9047. Under this statute the judgment of the court becomes final after thirty days if the term should continue for so long and during the thirty days the court has the power to set aside its judgment and the grant of an appeal, although the appeal has been perfected by the execution of an appeal bond or otherwise. This is recognized in *Memphis & Charleston R. Co.* v. *Johnson*, 84 Tenn., 387.

CHANCELLOR GIBSON states the rule thus:

"But at all times during the term, if within thirty days after its entry, the decree is under the control of the court; and may, during that period, be modified or even vacated; or the order granting an appeal, during the

same period, be vacated or modified." Chambliss' Gibson's Suits in Chancery, sec. 1262.

 It is said for the relator, if it be admitted that the court does not lose jurisdiction until after the expiration of the thirty days, nevertheless the order granting the appeal must be set aside before any additional proceedings can be had in the trial court. If, however, the court retains jurisdiction for thirty days and may within such period set aside the grant of an appeal, it must follow that during such time the court has jurisdiction to suspend an order granting an appeal and a motion for a new trial, seasonably made, by its own force, suspends a judgment or order previously entered. *Louisville & N. Railroad* v. *Ray*, 124 Tenn., 16, 134 S. W., 858, Ann. Cas. 1912D, 910; *Dunn* v. *State*, 127 Tenn., 267, 154 S. W., 969. At least it suspends the judgment so as to justify the court in entertaining the motion for a new tried, *Feldman* v. *Clark*, 153 Tenn., 373, 284 S. W., 353, and there is no final judgment from which an appeal in error would lie while the motion for a new trial is pending.

 So we are of opinion that the entry of the motion for a new trial on April 4 suspended the judgment granting the appeal on April 1, and the court retaining jurisdiction properly entertained this motion and upon overruling it had authority to grant an appeal and time within which to perfect a bill of exceptions. The entry of a motion for a new trial herein may be treated as an abandonment of the appeal first granted, as in *Newton Finance Corp.* v. *Conner*, 161 Tenn., 441, 33 S. W. (2d), 95, 72 A. L. R., 1286.

The relator seeks the writ of *mandamus* on the ground that the Commissioner acted arbitrarily in refusing to grant him the liquor dealer's license sought. Chapter 49

of the Pub. Acts of 1939 authorizes the employment of the writ under such circumstances.

The relator is a brother-in-law of a liquor dealer named Hallum whose license was revoked and the brother-in-law is seeking a license to operate the same business at the same place.

For the purposes of this case it may be conceded that the relator had complied with all the statutory prerequisites to obtaining a license and that the action of the Commissioner was arbitrary, unless justified by a rule that he had previously promulgated. The Act of 1939 regulating the sale of intoxicating liquors authorizes the Commissioner to make proper rules for the enforcement of the statute. We do not understand relator to challenge the authority of the Commissioner generally in this respect, but it is the particular rule here involved that is assailed. The rule is as follows:

"No license will be issued to any employee or other person having any interest in the place of business where a license has been revoked, nor will a license be issued to a relative of any employee or other person having any interest in the business for the privilege of doing business near the location of the establishment whose license was revoked."

 It is first insisted that the rule is too unreasonable to be sustained and sanctioned. We do not think so. The Commissioner testifies in the case and shows that on previous occasions, when it has been necessary to revoke a liquor dealer's license for acts of misconduct and violations of law, relatives have come forward and obtained a license to operate the business. Later it developed that these relatives were merely used as a front and, while nominally in charge, the business was really

carried on by the dealer whose license had been previously revoked. Cases in which some such situation has appeared have come before this Court. *State ex rel. Nixon* v. *McCanless*, 176 Tenn., 352, 141 S. W. (2d), 885. The object of the rule is to make it impossible for recreant liquor dealers, whose licenses have been revoked thereafter directly or indirectly, to engage in the same business in this State.

While it may be that the relator, the brother-in-law of the lawless dealer previously conducting this establishment, is himself a man of good character as the record indicates, he is nevertheless a brother-in-law. A man so connected with another is ordinarily subject to the influence of that other, and to prevent fraud and deception, the Commissioner was entirely justified in barring relatives as successors to lawbreaking liquor dealers. It is everywhere now accepted that the business of dealing in intoxicating liquors is subject to the most stringent regulation as to places where it is conducted, persons who shall conduct it, and as to whether it shall be conducted at all. *State ex rel. Saperstein* v. *Bass, Mayor*, 177 Tenn., 609, 152 S. W. (2d) 236; *State ex rel. Major* v. *Cummings, Mayor*, 178 Tenn., 378, 158 S. W. (2d), 713, 139 A. L. R., 837.

Another well-established proposition is that an innocent activity may be regulated or prohibited if its pursuit frequently offers opportunity for fraud or deception. *Gates* v. *Long*, 172 Tenn., 471, 113 S. W. (2d), 388; *Motlow* v. *State*, 125 Tenn., 547, 145 S. W., 177, L. R. A. 1916F, 177; *State* v. *W. M. Ausmus Mill Co.*, 123 Tenn., 399, 131 S. W., 867, Ann. Cas. 1912C, 248.

While as an individual the relator may be qualified as a

liquor dealer, as a brother-in-law of Hallum he is disqualified. The ban on his pursuing this avocation is justified by reason of the opportunity that his connection with Hallum affords the latter indirectly to conduct a business in which he has forfeited his right to engage.

██ It is urged that the relator does not come within the prohibition of the Commissioner's rule because it is said that he is not a relative of the former owner of the liquor store, it being urged that relative is here used in the sense of blood relative. We think the term is used in its broader sense and includes relative by affinity as well as by consanguinity. The disqualification was imposed like the disqualification is imposed on judges and jurors. The latter cannot sit in a case where one of the litigants is related, either by affinity or consanguinity, within the sixth degree. The idea of this rule, as it is of the constitution and statute, is to get rid of the bias that would favor a close connection. The word relative is not used here as it is used in matters of descent and distribution and in the construction of wills. It does not refer to blood relatives alone.

██ It is also contended that the rule is unenforceable because of the prohibition of the relative doing business "near" the location of the closed establishment. It is said that *near* may mean almost anything, but in many cases *near* is used as a synonym of *at*. See 28 Words and Phrases (Perm. Ed.), p. 108 *et seq.* Certainly near is a relative term but its meaning is to be determined by the surrounding facts and circumstances. Clearly, this prohibition against the conduct of a business near a certain place would include a prohibition against the conduct of the business at that identical place. No more is involved here.

Some other contentions are made which we have considered but do not regard as material. The judgment below will be reversed and the suit dismissed.

CHAMBLISS, NEIL, PREWITT, and GAILOR, JJ., concur.